UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM N. BERRY,

      Plaintiff,

v.

                                   Case No. 22-cv-11556
                                   HON. MARK A. GOLDSMITH

EXPERIAN INFORMATION SOLUTIONS,
INC., et al.,

      Defendants.

_____/

**OPINION & ORDER (1) GRANTING DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT (Dkt. 69); (2) DENYING PLAINTIFF ADAM N. BERRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 68); AND (3) DENYING DEFENDANT EXPERIAN'S MOTION IN LIMINE (Dkt. 70) AS MOOT**

Plaintiff Adam Berry alleges that Defendant Experian Information Solutions, Inc. violated the Fair Credit Reporting Act (FCRA), 15 U.S.C § 1681 et seq. by failing to follow reasonable procedures to assure maximum accuracy when furnishing information related to Berry in consumer reports and failing to properly investigate his credit disputes. Before the Court is Experian's motion for summary judgment (Dkt. 69), Berry's motion for partial summary judgment (Dkt. 68), and Experian's motion in limine (Dkt. 70).[1] For the reasons that follow, the Court grants Experian's motion for summary judgment and denies Berry's motion. Because the Court is granting summary judgment, the Court denies Experian's motion in limine as moot.[2]

---

[1] These motions follow the remand from the Sixth Circuit, which reversed this Court's earlier grant of Experian's motion for judgment on the pleadings. See Berry v. Experian Info. Sols., Inc., 115 F.4th 528 (6th Cir. 2024).

[2] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the pending motions, briefing includes: (i) as to Berry's motion for summary judgment: Experian's

1

## I.       BACKGROUND

Berry alleges that Experian, a consumer reporting agency (CRA), violated provisions under the FCRA requiring Experian (i) to follow reasonable procedures to assure maximum possible accuracy in reporting Berry's information under 15 U.S.C § 1681e(b), and (ii) to conduct a reasonable reinvestigation into information disputed by Berry under § 1681i. See Compl. ¶¶ 86–118 (Dkt. 1).

The genesis of this lawsuit was Berry's divorce in 2021.  The family court ordered Berry to pay his then former wife both child and spousal support.  1/9/21 Order at PageID.1206–1207 (Dkt. 69-8).  All payments were to be made through the Michigan Office of Child Support (OCS). See id.  However, Berry did not pay his former wife through OCS.  Berry Dep. at PageID.806 (Dkt. 68-6).  As a consequence, the OCS opened, and began reporting to Experian, a collection account for Berry's nonpayment of his court ordered support obligations.  Id. at 807–808.  Berry moved the family court for an order "abating both the child and spousal support and waiving any and all arrears for both."  Id. at PageID.813.  However, the family court entered an order to abate only child support, stating that "the obligation of Plaintiff to pay child support and all arrears through MiSDU [Michigan State Disbursement Unit] and Wayne County Friend of the Court is abated until further order of the Court."  6/1/21 Order at PageID.652 (Dkt. 68-1).  The order also instructed the parties to "enter a separate stipulated order modifying the Judgment of Divorce if they wish to abate spousal support."  Id.

About ten months later, while not paying his spousal support obligations through the OCS and thus continuing to have an OCS balance, Berry submitted and the family court entered a

---

response (Dkt. 79) and Berry's reply (Dkt. 81) and (ii) as to Experian's motion for summary judgment: Berry's response (Dkt. 78) and Experian's reply (Dkt. 82).

stipulated order abating his spousal support obligations. 3/29/22 Order at PageID.654–655 (Dkt. 68-2); Berry Dep. at PageID.796–803. The family court should have transmitted that order to the Friend of the Court (FOC), so that the Michigan Child Support Enforcement System, which reports delinquent child and spousal support obligations to CRAs, could be updated. See Mich. Comp. Laws § 552.512(1), (6). However, for reasons unknown to the Court and the parties, the FOC did not receive the spousal support abatement order after it was entered, and it thus did not update the Michigan Child Support Enforcement System. FOC Dep. at 56–57, 67–68 (Dkt. 69-11). Consequently, Berry continued to have an outstanding balance showing in the Michigan Child Support Enforcement System, which remained until after Berry provided the order abating spousal support to the FOC on October 31, 2022—over seven months after the order abating spousal support was entered and over three months after he filed this lawsuit. Id. at 36–37, 69–70.

Berry disputed the collection account with Experian three times: on April 6, 2022; May 22, 2022; and May 24, 2022. Teresa Iwanski Decl. ¶¶ 30–33 (Dkt. 69-3).[3] The only time Berry included any narrative information in his disputes was on May 22, and the only time Berry included any documents in his disputes was on May 24, when Berry uploaded the spousal support abatement order. Id.

After each dispute initiated by Berry, Experian sent an Automatic Credit Dispute Verification form (ACDV) to OCS to confirm its reporting. Id. at 36; ACVD (Dkt. 69-7). The ACDVs included all of Berry's information and any documentation provided in each dispute. ACVD; Mary Methvin Dep. at 214, 218, 220 (Dkt. 69-16). At the time Experian sent the ACDVs

---

[3] Iwanski is a Senior Litigation Analyst at Experian and the information set forth in her declaration is based on her "personal knowledge of Experian's policies and procedures and a review" of Berry's "Experian credit file, including all records associated with" his OCS account "and all dispute correspondence relating to" his OCS account. Id. ¶ 5.

to OCS, the Michigan Child Support Enforcement System showed an outstanding collection balance because the FOC never received the spousal support abatement order during the period when Berry had filed his disputes. FOC Dep. at 56, 69–70. OCS verified its reporting for all three disputes, and in responding to Experian's ACDVs, certified the accuracy of its reporting. Iwanski Decl. ¶ 38.

Experian provided the results of its reinvestigations to Berry on the same day it received those results—on April 7, 2022; May 23, 2022; and May 24, 2022. Id. ¶¶ 30, 40. The dispute results instructed Berry that "[if] our reinvestigation has not resolved your dispute," Plaintiff has the "right to add a statement of up to 100 words to your report." Id. ¶ 41. Berry never added any statement of dispute. Id. ¶ 42.

The dispute results of Experian's reinvestigations also explained to Berry that he "may contact the [data furnisher] that reports the information to us and dispute it directly with them." Id. ¶ 43. Berry did not contact the furnisher—or any entity associated with the furnisher, like the FOC—until October 31, 2022. FOC Dep. at 59–60. That was some three months after he had filed this lawsuit. See Compl.

Once Berry contacted the FOC on October 31, 2022, and after Berry provided it with the spousal support court order, the FOC updated the Michigan Child Support Enforcement System on November 1, 2022. FOC Dep. at 36–37, 70. OCS then requested Experian to delete the collection account on November 21, 2022, which Experian promptly did the next day. Iwanski Decl. ¶ 39.

## II.      ANALYSIS[4]

---

[4]In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). If a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled

What is to be adjudicated here must be determined in light of the earlier ruling by the Court of Appeals in this case. At the outset of the case, Experian moved for judgment on the pleadings, which this Court granted. 9/28/2023 Op. and Order (Dkt. 41). Berry appealed. The Sixth Circuit reversed and remanded stating:

> We do not decide whether Experian's procedures were per se reasonable or unreasonable. We need only determine whether Berry pleaded sufficient facts to state a claim that Experian was negligent in discharging its obligations to conduct a reasonable investigation and reinvestigation into the disputed information pursuant to §§ 1681e(b) and 1681i. We conclude that he did. Berry pleaded that Experian received the court orders but only ever [sic] sent automated verification forms to OCS and did not further investigate the state court documentation—an action that was fully within its control and competency to take. See Losch, 995 F.3d at 946–47 (concluding that CRA was negligent in discharging its reasonable investigation responsibilities when "[i]t did nothing, although it easily could have done something" such as checking the bankruptcy docket when the plaintiff gave "an account number, a discharge in bankruptcy, and an explanation," to dispute an inaccuracy in the plaintiff's credit report) (emphasis in original).

Berry, 115 F.4th at 540.[5]

The Sixth Circuit also held that "Experian was required to report Berry's unpaid support balance." Berry, 115 F.4th at 536. Berry can no longer argue, as he did at the pre-appeal stage, that the unpaid support balance should have been removed from the report, because the Sixth Circuit has spoken on the issue, which confines this case on remand. United States v. Twp. of Brighton, 282 F.3d 915, 919 (2002) ("Upon remand of a case for further proceedings after a decision by the appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." (punctuation modified)). Berry now argues that the

---

to judgment as a matter of law," the Court will grant the motion. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by presenting evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

[5] The Sixth Circuit affirmed the dismissal of the rest of the claims in Berry's complaint.

report on the unpaid support balance should have been modified or supplemented with other information, such as including the court order abating payment.

With this limitation in mind, this Court proceeds to address the dueling summary judgment motions. The broad issues to be addressed are whether the Court can determine, as a matter of law, that the information Experian reported was inaccurate and whether its reinvestigation utilized reasonable procedures.[6]

### A. Inaccurate information

In their respective motions for summary judgment, the parties disagree about whether Experian reported inaccurate information.

Berry argues that there is no dispute that the information reported by Experian was inaccurate in that the information was either "patently incorrect" or "misleading in such a way and to such an extent that it could have been expected to have an adverse effect on the consumer." Pl. Mot. at 11 (quoting Berry, 115 F.4th at 536).

The FCRA requires CRAs "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "[A] showing of inaccuracy is an essential element of a § 1681i claim." Berry, 115 F.4th at 536. A consumer

---

[6] Although Berry asserts two claims, they overlap to a significant degree. The first claim for failing to follow reasonable procedures to ensure maxim possible accuracy has the following elements: (i) the CRA reported inaccurate information; (ii) the CRA "negligently or willfully failed to follow reasonable procedures to ensure maximum possible accuracy of his information"; (iii) the Plaintiff was injured; and (iv) the CRA "was the proximate cause of his injury." Berry, 115 F.4th at 536. The second claim for failing to use reasonable procedures in investigating and reinvestigating a consumer dispute has the same elements except there is no report requirement. Losch v. Nationstar Mortg., LLC, 995 F.3d 937, 944 (11th Cir. 2021) (explaining that the elements of a § 1681i claim are the same as a § 1681e(b) claim, except that the plaintiff "needn't show that the agency prepared and distributed a report"). The parties argue over other elements, including causation and damages, but these issues need not be resolved based on the Court's ruling that Berry cannot establish the essential element that Experian failed to utilize reasonable procedures.

can demonstrate an inaccuracy where a report was "patently incorrect" or materially misleading or incomplete, even if it was technically true, and accuracy under the FCRA requires truthfulness and completeness.  Id.

Here, Berry argues that Experian indisputably reported inaccurate information about him as a matter of law.  Pl. Mot at 11.  Berry maintains that he, in fact, timely made all his required support payments in accordance with the terms of a valid consent judgment in the state court, and that this is confirmed by the June 2021 Order (Dkt. 68-1) and March 2022 Order (Dkt. 68-2).  Berry argues that reporting him as delinquent on this obligation or in collections, when he was not delinquent, is both patently inaccurate and misleading in a way that would be expected to have an adverse effect.  Pl. Mot at 11.

Experian argues that Berry has failed to demonstrate that it reported inaccurate information because Berry did not pay his support obligations in the manner ordered by the family court.  Def. Resp. at 19.  The consent judgment stated that Berry must pay support payments through the State of Michigan, and he did not do so.  Consent Judgment (Dkt. 78-3).

However, Experian misunderstands the way the statute uses the concept of accuracy.  The statute is not concerned with whether a consumer has acted or failed to act in a way that triggers the report of a debt when none is owed.  Experian has offered no case that says a debt that is not owed cannot be the basis for inaccurate reporting when the report was triggered by a debtor's action that is somehow inappropriate.  Clearly other provisions in the statute protect a CRA from claims of inaccurate reporting when the CRA has acted reasonably.  Such a provision is at work in this case.  But the threshold question of accuracy is devoid of an inquiry into whether a debt appeared to be accurate, even though it turns out not to be.

Experian offers no other reason to deem the information accurate.  Therefore, the Court finds that Experian reported inaccurate information.

### B.  Reasonable procedures

The requirement for reasonable procedures includes at least three components: (i) the information was not obtained from a "source that was known to be unreliable," (ii) the information was "not inaccurate on its face," (iii) the information is not inconsistent with information the CRA already has on file."  Hammoud v Equifax Info. Servs., LLC, 52 F.4th 669, 675 (6th Cir. 2022). These requirements are met, as a matter of law, in Experian's favor.

The source of the information was OCS, a state agency charged with reporting delinquencies in support obligations.  The Michigan Legislature expressly entrusted and required OCS to report overdue support obligations to credit reporting agencies.  See Mich. Comp. Laws § 552.512(1), (6).  A CRA is entitled to rely on state agencies that are the source of information, including agencies reporting about support, which the FCRA mandates must be reported.  Watkins v. Experian Info. Sols., Inc., No. CV 23-20860, 2025 WL 79698, at *4 (D.N.J. Jan. 13, 2025) (holding that while not immune from FRCRA claims, "CRAs are required to report information from child support agencies").  Further, there was nothing on the face of the information reported by OCS that suggested that it was inaccurate.

This means Berry's case must turn on some other alleged deficiencies in reinvestigation. To be sure, reinvestigation requires "more than simply including public documents in a consumer report or making only a cursory investigation into the reliability of information that is reported to potential creditors."  Berry, 115 F.4th at 539 (punctuation modified).  The term "investigation itself denotes a fairly searching inquiry, or at least something more than a merely cursory review."  Id. (punctuation modified).

Berry contends that Experian was required to do more than it did—which he says amounted to merely forwarding Berry's disputes to the furnisher that provided the inaccurate information to Experian. Id. at 15. In particular, Berry takes issue with Experian's alleged reliance on automated processes (ACDV).[7] According to Berry, Experian performed no investigation, or inquiry, and merely relied on the ACDVs, despite possessing the court order(s) confirming that the reported information was inaccurate. Pl. Resp. at 11.

But that is not an accurate statement of what Experian did. It engaged an individual–not a computer—to review the spousal support abatement order that Berry provided. That person determined that the order was insufficient to independently delete the tradeline because the account number on the spousal support abatement order did not match the account number reported by the State of Michigan. Further, the order that Berry provided addressed only spousal support while name of the furnisher at issue ("State of Michigan Child Support") and the account type ("family support") left it unclear as to what obligation the order covered. Iwanski Decl. ¶¶ 34–35; Methvin Dep. at 191. It was also unclear whether there were other support obligations outside what the order covered, as it was "not clear that" the spousal support collection account was "the only account and" that it was "the exact account." Methvin Dep. at 252. As a result, Experian investigated the disputes, using information Berry provided. Iwasnski Decl. ¶¶ 30, 36–41; Methvin Dep. at 214, 218, 220.

---

[7]Iwanski describes how Experian utilizes ACDVs:

> An ACDV identifies the consumer and account involved, describes the basis for the dispute, and requests that the furnisher respond by verifying or modifying the credit information as appropriate. The furnisher then returns the ACDV to Experian (or Experian receives a carbon copy from another CRA) and based upon the furnisher's own investigation, requests that Experian either leave the disputed credit information as is, delete it, or change it in some specified manner.

Iwanski Decl. at ¶ 19.

9

The State of Michigan verified the information following each of the submissions, which meant that a state employee had to certify that the employee had "reviewed and considered all associated images…[and] reviewed the accuracy of the data in compliance with all legal requirements…." Methvin Dep. at 246–247. Each time, the State of Michigan stood by its determination that the report was accurate. Methvin Rpt. at 14 (Dkt. 69-15). And each time, Experian provided its reinvestigation results to Berry. Iwanski Decl. ¶ 38; Def. Resp. at 22.

Experian also advised Berry that he could contact the furnisher—or any entity associated with the furnisher (such as the FOC). Iwanski Decl. ¶ 43. Notably, Berry did not contact the FOC until three months after he filed this lawsuit.

Ultimately, the State of Michigan requested that Experian delete the account, which Experian promptly did. Id.

All of these undertakings led Experian's expert to conclude: "[T]here is nothing that Experian could have done differently to change the position of the State of Michigan Office of Child Support that the account was accurately attributed to Plaintiff, other than relay the document provided by Plaintiff for verification and review." Methvin Rpt. at 16. Berry did not supply any countervailing expert testimony as to this point.

Plainly, the inquiry here was a "searching" one. Given the repeated efforts Experian undertook, Berry cannot show, as a matter of law, that it failed to follow reasonable procedures.

The only factual dispute that Berry attempts to raise in connection with this analysis is his contention that he had supplied Experian with the child support abatement order, in addition to the spousal support abatement order, at the time he lodged his disputes. This raises two questions: Is there a genuine dispute about whether Experian received the child support abatement order? Is that issue material?

10

As to the first issue, Experian asserts Berry never provided Experian with the child support court order.  Pl. Mot. at 17; Methvin Dep. at 246 ("There was only one document uploaded.").  According to Experian, Berry did not provide an explanation to Experian about that court order in any of his disputes.  Pl. Mot. at 17.  Berry testified that he "did upload both orders."  Berry Dep. at PageID.859.  But perplexingly, while Berry maintains that he uploaded both orders, he admits that he does not refer to the child support order at all in his submissions, and that his submissions only refer to the spousal support abatement order that was uploaded.  Id. at PageID.859–861.  He also admits that he has no proof, other than his own testimony, that he uploaded the orders.  Id. at PageID.860.

Even if the Court were to accept Berry's statements that he uploaded the order, § 1681e requires that the CRA "received" the relevant information in the dispute. So it does not matter whether or not Berry submitted the order—what matters is whether Experian received it.  Indeed, Experian's records show that Berry submitted only one order—the spousal support order.  ACDVs at 5 (Dkt.77); Methvin Dep. at 246 ("There was only one document uploaded.").  Because Berry has not put forward any evidence showing that the order was received, there is no genuine issue of disputed fact as to whether Experian received the child support abatement order.

Regarding materiality of this issue, Berry seems to be suggesting that if Experian were armed with both orders, then it would have been clear that he had no family support obligation.

However, it is undisputed that the FOC had the child support abatement order during the time period when Berry was lodging his disputes.  That means that when Experian forwarded to the OCS the spousal support abatement order in May 2022, the OCS had both orders.  Nonetheless, the State of Michigan stood firm that Berry still had outstanding support obligations.  The State of Michigan did not request or agree to any modification of the report that stated an obligation

remained. Thus, even if Experian had received the child support abatement order it would have had no bearing on any issue in this case, given that the State of Michigan had that order and remained firm in its belief that Berry still had an unsatisfied obligation. The issue is thus not material.

In sum, Berry essentially argues that Experian did not follow reasonable procedures, even though it did all it could do to present relevant information to the state agency charged with enforcing support obligations. For whatever reason, the State of Michigan would not change its mind when that information was first presented, although it later did. The State of Michigan's initial refusal cannot saddle Experian with liability, because Experian had no further information to uncover or share that the State did not already possess. The FCRA creates an obligation to employ reasonable procedures—not procedures that always vindicate a consumer's challenge to a claimed debt.

Based on the record developed, the Court concludes that Berry has not shown that Experian did not follow reasonable procedures in its investigations.

### III. CONCLUSION

The Court grants Experian's motion for summary judgment (Dkt. 69) and denies Berry's motion for summary judgment (Dkt. 68). The Court denies Experian's motion in limine (Dkt. 70) as moot.

**SO ORDERED.**

Dated: March 31, 2026  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

12

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager

13